IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF RIDE THE DUCK INTERNATIONAL, LLC AND HERSCHEND FAMILY ENTERTAINMENT CORPORATION, AS OWNER AND OWNER *PRO HAC VICE OF THE DUKW#34* FOR *EXONERATION FROM OR LIMITATION OF LIABILITY* | IN ADMIRALTY<br><br>C.A. NO. 11-CV-00079 |

## CLAIM AND ANSWER TO COMPLAINT
## FOR EXONERATION OF LIMITATION OF LIABILITY

### CLAIM

1. The below averments in Answer to Plaintiffs' Complaint are incorporated here by reference. As alleged therein, the Ride the Ducks Plaintiffs'[1] vessel, *DUKW 34*, was unseaworthy and the Plaintiffs were negligent in their duties with respect to the vessel, thereby causing Rachel Lynn Keller's injuries and precluding any exoneration from, or limitation of, Plaintiffs' liability.

2. Rachel Lynn Keller was onboard *DUKW 34* when barge *The Resource*, under command of M/V *Caribbean Sea*, collided with *DUKW 34*, thereby sinking *DUKW 34*. As a result of the accident, Rachel Lynn Keller suffered personal injuries, as well as the loss of personal property. Such personal injuries included, but are not limited to,

    a.    physical, mental and emotional pain and suffering;

    b.    diminished quality of life;

    c.    past and future medical care and treatment, and bills associated therewith;

---

[1] All plaintiffs in the above-captioned action are referred to collectively as the "Ride the Ducks Plaintiffs."

    d. past and future mental anguish, humiliation, embarrassment, loss of life's pleasures, and emotional distress; and

    e. impairment of usual duties, vocation, and occupation, and has suffered and will continue to suffer in the future loss of earnings and earnings capacity.

  The sum certain of those aforementioned damages is not ascertainable at this time, but it is specifically averred, upon information and belief, that the claims of all persons injured by the actions of the Ride the Ducks Plaintiffs exceed the security deposited with this Court by the Ride the Ducks Plaintiffs.

## ANSWER TO COMPLAINT OF RIDE THE DUCKS INTERNATIONAL, ET AL. FOR EXONERATION OR LIMITATION OF LIABILITY

  1. Admitted only that the Ride the Ducks Plaintiffs claim jurisdiction of this Court for their Limitation of Liability Complaint. It is denied that the Ride the Ducks Plaintiffs, or any other party responsible for Rachel Lynn Keller's injuries, are entitled to any limitation of their liability under Pennsylvania, Federal, or Maritime law. It is averred that jurisdiction and venue for the disposition of Rachel Lynn Keller's claims against the Ride the Ducks Plaintiffs and any other party responsible for Rachel Lynn Keller's injuries is more properly situated in the Court of Common Pleas for Philadelphia County.

  2-8 Kimberly E. Keller, as parent and natural guardian of Rachel Lynn Keller lacks knowledge or information sufficient to form a belief about the truth of these allegations and so, pursuant to Fed.R.Civ.P. 8(b)(5), they are denied. Without waiver of the foregoing, Kimberly E. Keller, as parent and natural guardian of Rachel Lynn Keller believes, and so avers, that the principle place of business for at least one of those entities is Philadelphia, Pennsylvania, and that *DUKW 34* was at all relevant times based at, maintained at, managed at, manned at, and departed from Philadelphia, Pennsylvania.

9-14.   Denied. The relationship among the various Ride the Ducks Plaintiffs are better known to those plaintiffs, but it is known that, at the time of the accident at issue in this civil action, Ride the Ducks International did not hold a valid City of Philadelphia Business Privilege License, but rather improperly utilized the BPL license granted to Penn Ducks when applying for Ride the Ducks International's license to operate amphibious vehicles, including *DUKW 34*. It is thus denied that only Ride the Ducks International was involved in the maintenance and operation of *DUKW 34*.

15.   Responding Kimberly E. Keller, as parent and natural guardian of Rachel Lynn Keller does not have sufficient information to admit or deny these allegations, other than to admit the approximate size of *DUKW 34*.

16.   Denied. For example, without limitation, the Ride the Ducks Plaintiffs failed to even ensure the cap was placed on the radiator for *DUKW 34*'s voyage on July 7, 2010, and further failed to ensure that the vessel was "tight, staunch, strong, properly manned, equipped, or supplied" such as how the Ride the Ducks Plaintiffs:

(a) Failed to establish and to enforce appropriate policies, protocols and training to ensure the crew of *DUKW 34* at all times maintained a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision, as required by Rule 5, including by failing to require the master and deckhand maintain continuous visual and audio awareness in all directions if their vessel lost command.

(b) Failed to establish and to enforce appropriate policies, protocols and training to ensure the crew of *DUKW 34* at all times used all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists, as required by Rule 7(a), including by failing to require the master and deckhand maintain continuous visual and audio awareness in all directions if their vessel lost command.

(c) Failed to establish and to enforce appropriate policies, protocols and training to ensure the crew of *DUKW 34* did not make assumptions on the basis of scanty information, as required by Rule 7(c), including by failing

to require the master and deckhand maintain continuous visual and audio awareness in all directions if their vessel lost command.

(d) Failed to establish and to enforce appropriate policies, protocols and training to ensure the crew of *DUKW 34* would make positive action, with ample time, to avoid collision, as required by Rule 8(a), including by failing to require the master and deckhand continue piloting a malfunctioning vessel until it was out of the channel before disabling it and by failing to require the master and deckhand attempt restart a malfunction vessel if they had any doubt as to whether another vessel was taking sufficient action to avoid collision.

(e) Failed to establish and to enforce appropriate policies, protocols and training to ensure the crew of *DUKW 34* recognized they were proceeding in a narrow channel, and thereafter keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable, as required by Rule 9(a), thereby permitting the *DUKW 34* to operate near the center of the navigational channel.

(f) Failed to establish and to enforce appropriate policies, protocols and training to ensure the crew of *DUKW 34* carried means of making an efficient signal, as required by Rule 33, instead relying on a single horn that was dependent upon the electrical system.

(g) Failed to establish and to enforce appropriate policies, protocols and training to ensure the crew of *DUKW 34* understood that, if they failed to understand the intentions or actions of another, or were in doubt whether sufficient action is being taken by the other to avoid collision, they must immediately indicate such doubt by giving at least five short and rapid blasts of their efficient signal, as required by Rule 34(d).

(h) Failed to establish and to enforce appropriate policies, protocols and training to ensure the crew of *DUKW 34*, once in distress, used or exhibited efficient signals, as required by Rule 37.

(i) Failed to establish and to enforce appropriate policies, protocols and training to ensure the crew of *DUKW 34* understood that a vessel not under command, as *DUKW 34* became, is in distress and requires immediate assistance.

(j) Failed to establish and to enforce appropriate policies, protocols and training to ensure the crew of *DUKW 34* understood that, if their vessel is in distress, they must immediately alert the Coast Guard and all nearby vessels by way of a distress call on VHF Channel 16.

(k) Failed to establish and to enforce appropriate policies, protocols and training to ensure the crew of *DUKW 34* stayed within the area of the

                Delaware River approved by the Coast Guard and the City of Philadelphia for use by *DUKW 34*.

(l)     Failed to establish and to enforce appropriate policies, protocols and training to ensure the crew of *DUKW 34* stayed outside of the commercial shipping channel within the Delaware River.

(m)     Failed to establish and to enforce appropriate policies, protocols and training to ensure the crew of *DUKW 34*, upon recognizing the likelihood of a collision, were able to instruct the passengers as to how they should disembark to avoid injury.

(n)     Failed to ensure the reliability and functionality of the engine onboard *DUKW 34*, despite multiple prior malfunctions by engines within their fleet, such as overheating, requiring the engine be shut down.

(o)     The aforementioned unseaworthiness was within the privity or knowledge of the master of the *DUKW 34*, Gary Fox, at or before the beginning of her voyage on July 7, 2010.

(p)     The aforementioned unseaworthiness was within the privity or knowledge Defendant Blumenthal at or before the beginning of *DUKW 34's* voyage on July 7, 2010.

(q)     The aforementioned unseaworthiness was within the privity and/or knowledge of the Ride the Ducks Defendants.

17.     The facts alleged in paragraph 17 are admitted in part, but it is denied that *DUKW 34* was "lawfully" anchored at the time of the accident, because *DUKW 34* was only in that position as a result of the negligence and unseaworthiness of, respectively, the Ride the Ducks Plaintiffs (and their agents and employees) and the *DUKW 34*.

18.     Denied. It is specifically averred that Rachel Lynn Keller's claims for personal injuries were caused or contributed to by fault or want of care on the part of the plaintiffs, *DUKW 34*, or those in charge of it.

19.     Denied. It is specifically averred that the foregoing casualties were done, occasioned, and occurred within the privity or knowledge of the Plaintiffs, and the Master of the *DUKW 34*.

20. Admitted.

21. Admitted.

22. Admitted, to the extent that "Port of Philadelphia" is interpreted broadly, because the voyage in question did not begin at the formal port, but did begin within the city limits of Philadelphia, Pennsylvania.

23. Admitted to the best of Kimberly E. Keller's, as parent and natural guardian of Rachel Lynn Keller, knowledge and belief.

24. Kimberly E. Keller, as parent and natural guardian of Rachel Lynn Keller does not have sufficient information or knowledge to admit or deny this averment, and so it is denied.

25. No response required to this deposit.

26. Admitted to the best of Kimberly E. Keller's, as parent and natural guardian of Rachel Lynn Keller knowledge and belief.

27. Plaintiffs' legal conclusions are denied. It is specifically averred that the Ride the Ducks Plaintiffs and the K-Sea Plaintiffs in the related action are all jointly and severally liable for the entirety of Kimberly E. Keller's as parent and natural guardian of Rachel Lynn Keller, damages, and that none of the aforementioned plaintiffs are entitled to any limitation or liability to Rachel Lynn Keller or to any other claimant arising from the accident.

WHEREFORE, Kimberly E. Keller, as parent and natural guardian of Rachel Lynn Keller respectfully requests that this dissolve the present injunction on litigation against the Ride the Ducks Plaintiffs Court as soon as practicable and thereafter determine that the Ride the Ducks Plaintiffs are not entitled to any limitation of their liability arising from the July 7, 2010 incident.

                                      **THE BEASLEY FIRM, LLC**

                                      By: /s/Maxwell S. Kennerly
                                            **JAMES E. BEASLEY, JR.**
                                            **MAXWELL S. KENNERLY**
                                            **The Beasley Building**
                                            **1125 Walnut Street**
                                            **Philadelphia, PA 19107**
                                            **215-592-1000**
                                            **Attorney I.D.  203362**
                                            **Counsel for Kimberly E. Keller,,**
                                            **as parent and natural guardian of**
                                            **Rachel Lynn Keller**